Paul R. Cressman, AK. Bar No. 0607046
Ahlers & Cressman PLLC
999 Third Avenue, Suite 3800
Seattle, Washington  98104
**Telephone**:    206-389-8243
**Facsimile**:    206-287-9902
**Email**:        pcressman@ac-lawyers.com

Todd C. Hayes, *Pro Hac Vice*
Charles K. Davis, *Pro Hac Vice*
Harper | Hayes PLLC
600 University Street, Suite 2420
Seattle, Washington  98101
**Telephone**:    206-340-8010
**Facsimile**:    206-260-2852
**Email**:        todd@harperhayes.com
                cdavis@harperhayes.com

Attorneys for Plaintiff Dokoozian Construction LLC

# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| DOKOOZIAN CONSTRUCTION, LLC, an Alaska corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>EXECUTIVE RISK SPECIALTY INSURANCE COMPANY, a foreign insurance company; COLONY INSURANCE COMPANY, a foreign insurance company; and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a foreign insurance company,<br><br>    Defendants. | Case No. 3:15-cv-00137-TMB<br><br>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

## I.    INTRODUCTION AND RELIEF REQUESTED

This is an insurance coverage dispute arising out of a construction project.  The City of Cordova was the project's owner.  Plaintiff Dokoozian Construction, LLC was the general contractor.  Defendants are Dokoozian's liability insurers.

In 2014, the City sued Dokoozian for, among other things, misrepresenting the amount of a damages claim that Dokoozian had submitted to the City.  The City also claimed Dokoozian had failed to properly manage the construction project.  Dokoozian tendered the City's claims to Defendants Executive Risk and Colony, both of which eventually agreed to defend Dokoozian.  Nevertheless, the insurers paid only a portion of Dokoozian's defense costs.  Accordingly, Dokoozian requests an order that Executive Risk and Colony owed and breached a duty to defend Dokoozian from the City's claims, such that Executive Risk and Colony are jointly and severally liable for all defense costs that Dokoozian reasonably incurred in defending against the City's claims.  Moreover, because "an insurance company which wrongfully refuses to defend is liable for the judgment which ensues even though the facts may ultimately demonstrate that no indemnity is due," Sauer v. Home Indem. Co., 841 P.2d 176, 184 (Alaska 1992), Dokoozian also requests an order that Executive Risk and Colony are responsible for whatever liability Dokoozian incurred to the City of Cordova in the underlying dispute (Dokoozian is not seeking a ruling regarding the amount of that liability).

Dokoozian also requests an order that Executive Risk's "other insurance" clause did not excuse it from its duty to defend Dokoozian (which is apparently why Executive Risk started paying Dokoozian's defense costs, but then stopped once Colony agreed to

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

defend).  An "other insurance" clause is relevant only to an insurer's indemnity and contribution rights; it does not affect the insurer's duty to defend its insured.  Moreover, an "other insurance" clause applies only when two policies cover the same risk, and Executive Risk's director's & officer's insurance and Colony's errors & omissions insurance necessarily cover different risks.

Finally, Dokoozian requests an order that all three Defendants are liable for the portion of Dokoozian's claim *against* the City that Dokoozian released as consideration for the release of the City's claims against Dokoozian.  Although the Alaska Supreme Court has not addressed this precise issue, courts in other jurisdictions have held that if a policyholder gives up its own claim to secure the release of claims against the policyholder, the liability insurer must reimburse the policyholder for the claim it gave up.  *See, e.g.*, Earth Elements, Inc. v. National American Ins. Co. of California, 48 Cal. Rptr. 2d 399, 401 (Cal. Ct. App. 1995) ("The issue here is whether [the policyholder] is entitled to be compensated for the value of [the counterclaim] which it gave up in return for the settlement.  That answer is clearly yes.").

## II.  FACTS

### A.  THE UNDERLYING DISPUTE

In August 2010, the City of Cordova and Dokoozian entered into a written agreement for Dokoozian to serve as general contractor for the construction of "Phase I" of a community center in Cordova, Alaska.  *See Declaration of Kurt Imig* ¶ 3.  The Project called for Dokoozian to perform site work and to construct the foundations, superstructure, and "primary building enclosure" for the community center.  *Id.*  The City planned to later

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

add electrical and mechanical systems and to complete the interior of the facility in a separate "Phase II."  *Id.*

Dokoozian commenced work in September 2010 and substantially completed the window portion of its work in early September 2012.  *Imig Decl. ¶ 4.*  Dokoozian retained a subcontractor called Capitol Glass to provide and install the curtain wall and store front windows and to provide the vinyl windows.  *Id.*

In late September 2012, following a severe rain storm, the City began to complain about leaking windows, which the City claimed had resulted in "cracks at the rigid sealant line," corrosion, and other property damage.  *Imig Decl. ¶ 5.*  The City further claimed that Dokoozian was responsible for failing to properly manage the construction.  *Id.*  Although Dokoozian disputed that it was at fault (and in fact believed the City's architect had mis-designed the windows), Dokoozian worked with the City throughout the spring and summer of 2013 to attempt to repair the windows.  *Imig Decl. ¶ 6.*  In total, Dokoozian spent approximately $727,678 to attempt to repair the windows and surrounding property damage.  *Id.*  Ultimately, the City and Dokoozian could not resolve the City's complaints and, on October 28, 2013, the City ordered Dokoozian to stop all repair work.  *Id.*

In March 2014, Dokoozian filed a demand for arbitration against the City.  *Imig Decl., Ex. A.*  The demand alleged $5,800,000 in damages, plus attorney's fees and interest.  *Id.*  Dokoozian later amended its arbitration demand to assert a claim for treble damages against the City under Alaska's Unfair Trade Practices and Consumer Protection Act ("UTPCPA").  *Imig Decl. ¶ 8; see also Imig Decl., Ex. B.*  Dokoozian alleged the City violated the UTPCPA by soliciting bids for a project while knowing the plans and

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

specifications for that project were inadequate for accurate bidding or construction. *Id.* At this point, Dokoozian was seeking at least $17.4 million in damages from the City (treble its original $5.8 million claim). *Id.*

In April 2014, the City filed a counterclaim in the arbitration. *Imig Decl., Ex. C.* The one-page counterclaim—filled out on a pre-printed American Arbitration Association form—identified "expenses incurred to evaluate and repair defective work performed by Claimant" as part of the City's damages. *Id.* The City requested $1,500,000 in damages, plus attorney's fees, interest, and arbitration costs. *Id.*

In July 2014, the City filed a lawsuit against Dokoozian in Alaska Superior Court. *See Imig Decl., Ex. D.* The lawsuit alleged that Dokoozian violated the UTPCPA by originally asserting a claim against the City for several million dollars more than the $5.8 million (in non-trebled damages) that Dokoozian was seeking in the arbitration. *Id.* Dokoozian successfully moved to compel arbitration of the City's UTPCPA claim, which was added to the City's other counterclaims in the arbitration. *See Imig Decl. ¶ 12.*

In November 2014, Dokoozian and the City of Cordova attended a mediation. *See Imig Decl. ¶ 13.* The mediation was unsuccessful, so Dokoozian served an offer of judgment on the City in the amount of $3,250,000. *Imig Decl. ¶ 14.* The City accepted the offer on December 10, 2014, ending all litigation between the parties. *Id.* Dokoozian and the City later executed a settlement agreement that included mutual releases. *Imig Decl. ¶ 15.*

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 5

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

## B.     DEFENDANTS' INSURANCE POLICIES

Defendants were Dokoozian's liability insurers. Executive Risk sold Dokoozian a "ForeFront Portfolio 3.0" policy that included a "directors & officers and entity liability coverage part"—so-called "D&O" coverage. *See Imig Decl., Ex. E.* Colony insured Dokoozian under an "environmental package policy" with an "errors and omissions liability coverage part"—*i.e.*, "E&O" coverage. *See Imig Decl., Ex. F.* National Union was Dokoozian's Commercial General Liability ("CGL") insurer. *See Imig Decl., Ex. G.*

### 1.     The Executive Risk Policy

The "D&O" coverage in the Executive Risk policy insures "the Organization" (which is defined to include Dokoozian[1]) against "Loss" resulting from a "Claim":

> The Company shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against the **Organization** during the **Policy Period**.
>     . . . .
>     **Loss** means the amount which an **Insured** becomes legally obligated to pay as a result of any **Claim**, including . . . **Defense Costs** . . . ."

*Imig Decl., Ex. E* at 16; 19. A "Claim" is any lawsuit or written demand that is based on "a Wrongful Act," which the policy broadly defines as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty . . . allegedly committed or attempted by . . . any Organization." *Imig Decl., Ex. E* at 20.

---

[1]     *See Imig Decl., Ex. E* at 77 ("[T]he definition of Organization . . . is amended to include . . . Dokoozian Construction, LLC").

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 6

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

In addition to defining "Loss" as including "Defense Costs," the policy expressly states that Executive Risk has a "duty to defend" covered claims:

> The Company shall have the right *and duty* to defend any **Claim** covered by this Coverage Part. Coverage shall apply even if any of the allegations are groundless, false or fraudulent.

*Imig Decl., Ex. E* at 24 (italics added). The policy further states that if an insured incurs Loss that is both covered and uncovered, all Defense Costs incurred by that insured "shall be covered Loss":

> If an **Insured** who is afforded coverage for a **Claim** incurs an amount consisting of both **Loss** that is covered by this Coverage Part and also loss that is not covered by this Coverage Part because such **Claim** includes both covered and uncovered matters, then coverage shall apply as follows:
>
> (A) Defense Costs: *one hundred percent (100%) of Defense Costs incurred by such Insured on account of such Claim shall be covered Loss* . . . .

*Imig Decl., Ex. E* at 25 (italics added).

Claims must be made during the March 1, 2014 to March 1, 2015 policy period. *See Imig Decl., Ex. E* at 16. ("The Company shall pay . . . on account of a **Claim** first made . . . during the **Policy Period** . . . ."). The City filed its arbitration counterclaim on April 10, 2014 and its lawsuit on July 21, 2014. *See Imig Decl., Ex. C; D.* Dokoozian notified Executive Risk of the City's claims on July 25, 2014. *See Imig Decl., Ex. H*.

## 2. The Colony Policy

The Colony "E&O" coverage also affords liability coverage for "wrongful acts," though it defines that phrase differently:

> We will pay, in excess of the Deductible shown in the Declarations, those sums the insured becomes legally obligated to pay as "damages" because of a "wrongful act" to which this insurance applies.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

. . . .

     "Wrongful act" means an act, error or omission in the rendering or failure to render "professional services . . . ."

*Imig Decl., Ex. F* at 26; 21. "Professional services" are "those functions performed for others by [the insured] or on [its] behalf that are related to [the insured's] practice as a consultant, engineer, architect, surveyor, laboratory *or construction manager*." *Id.* at 20. (emphasis added). The E&O coverage also states that Colony has a "duty to defend":

> If . . . Errors And Omissions Liability . . . is purchased and the corresponding Coverage Part is attached to these Common Policy Provisions, the following provisions apply to . . . Insuring Agreement E - Errors And Omissions Liability . . . :
>
> a. We will have the right and duty to defend the insured against any "suit" seeking "damages" to which this insurance applies.

*Imig Decl., Ex. F* at 8. Claims under the E&O coverage must be made and reported during the March 1, 2014 to March 1, 2016 policy period. *See id.* at 22 (requiring "[t]he 'claim' for 'damages'" to be "first made against any insured and reported to [Colony] . . . during the 'policy period' . . . ."). Dokoozian gave Colony notice of the City's claims on July 25, 2014. *See Imig Decl., Ex. I.*

     **3.**    **The National Union Policy**

     National Union's CGL policy covers "sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." *See Imig Decl., Ex. G* at 6. "Property damage" means, among other things, "physical injury to tangible property." *Id* at 18. The CGL policy is "occurrence-based"—it covers liability for "property damage" that occurs during the March 1, 2012 to March 1, 2013 policy period, regardless of when the insured gets sued. *See id* at 6 ("This insurance

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 8

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

applies to . . . 'property damage' only if . . . [t]he . . . 'property damage' occurs during the policy period . . . ."). Although the City did not specify in its counterclaim when the "cracking" from the leaking windows allegedly occurred, the City did not allege that the cracking occurred before March 2012 or after March 2013 (*i.e.*, outside the National Union policy period). *See Imig Decl., Ex. C.*

## C.   HISTORY OF THE INSURANCE CLAIMS

On July 25, 2014, an insurance intermediary sent a notice regarding the City's claims against Dokoozian to Colony and Executive Risk. *See Imig Decl., Ex. H*; *I*. After exchanging some initial emails with Dokoozian and issuing an initial coverage position letter, Executive Risk ultimately agreed on December 12, 2014 to "accept coverage" for the City's claims against Dokoozian:

> In light of the foregoing, this will confirm that, Executive Risk, following our review of the information contained in the copies of the written materials provided to us, will agree to amend its coverage position to accept coverage for this matter as to Dokoozian Construction, LLC under Entity Liability Coverage Insuring Clause I.(C) of the D&O and Entity Liability Coverage Part of the Policy, subject to the following reservation of rights and satisfaction of the applicable $15,000 Retention.

*Imig Decl., Ex. J.* In response to this letter, Dokoozian forwarded defense counsel invoices to Executive Risk, which paid a portion of them (approximately $133,000 out of the more than $600,000 that Dokoozian had incurred). *Imig Decl. ¶ 22.* But then on April 3, 2015, Executive Risk notified Dokoozian that it would no longer pay Dokoozian's defense costs. *See Imig Decl., Ex. K.* Executive Risk claimed that an "other insurance" clause in its policy rendered its coverage excess to Colony's, so Colony would have to pay for Dokoozian's defense. *Id.*

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 9

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

Although Colony acknowledged Dokoozian's notice, Colony never provided a written coverage position. *Imig Decl. ¶ 25; see also Imig Decl., Ex. L.* During the fall of 2014, Colony exchanged some emails and had at least one phone call with Dokoozian representatives. *Id.* In November 2014, Dokoozian's lawyer sent a letter to Colony further explaining why the company believed the City's claims were potentially covered and asking again for a response. *See Declaration of Todd C. Hayes, Ex. A.* On December 3, 2014, a Colony representative emailed Dokoozian's counsel to arrange a conference call for the following day. *Hayes Decl., Ex. B.* During the December 4 call, the Colony representative explained that Colony had decided that it would participate in Dokoozian's defense from the City's claims. *Hayes Decl. ¶ 4.* A Colony representative then sent a follow-up email regarding allocation of the defense costs. *See Hayes Decl., Ex. C.* Notwithstanding Colony's commitment, it never actually paid Dokoozian's lawyers or reimbursed Dokoozian for any of the defense costs Dokoozian had already paid. *Imig Decl. ¶ 26.*

Dokoozian sent notice of the Underlying Dispute to National Union on November 24, 2014. *See Hayes Decl., Ex. D.* A representative of National Union contacted Dokoozian's counsel on December 10, 2014, but did not take a position on whether National Union would defend or indemnify Dokoozian. *See Hayes Decl., Ex. E.* Dokoozian's counsel sent follow-up letters on February 9, 2015 and April 7, 2015. *See Hayes Decl., Ex. F; G.* National Union responded on April 14, requesting information that had already been provided in the February 9 letter. *See Hayes Decl., Ex. H.* On August 26, 2015 (three months after Dokoozian filed this lawsuit), National Union sent a letter

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

incorrectly stating that Dokoozian was seeking coverage as an "additional insured" (as opposed to as a named insured, which is how the National Union policy identifies Dokoozian). *See Hayes Decl., Ex. I*; *see also Imig Decl., Ex. G* at 5 (policy provision stating it "provides coverage for . . . the following Named Insureds: Dokoozian Construction, LLC . . . ."). The National Union letter did not address whether the City's claims were potentially covered or otherwise respond to Dokoozian's request for benefits; it simply stated that "[t]he Declaratory Action filed by Dokoozian will address all of these coverage issues [regarding Dokoozian's alleged status as an "additional insured"]." *See Hayes Decl., Ex. I.*

## III.  STATEMENT OF ISSUES

The issues presented are (1) whether Executive Risk and Colony owed and breached a duty to defend Dokoozian; (2) whether Executive Risk and Colony are estopped from denying coverage; (3) whether Executive Risk's "other insurance" clause did not excuse its duty to defend; and (4) whether Defendants are liable for the portion of Dokoozian's affirmative claim that Dokoozian released to settle the City's claims.

## IV.  EVIDENCE RELIED UPON

This motion is based on the pleadings and other papers previously filed in this matter and the declarations of Kurt Imig and Todd Hayes, with exhibits.

## V.  ARGUMENT

### A.  STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FRCP 56(c).

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 11

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

While evidence must be construed in favor of the non-movant, summary judgment is nevertheless appropriate if no rational fact finder could decide for the nonmoving party. Bathony v. Transamerica Occidental Life Ins. Co., 795 F. Supp. 296, 298 (D. Alaska 1992). The nonmoving party cannot rest upon the mere allegations or denials of his or her pleadings, but must instead produce sufficient evidence of specific facts—by affidavit or other evidentiary materials allowed by Rule 56(e)—showing a genuine issue for trial. Knisley v. Advancia Corp. Disability Benefits Plan, 363 F. Supp. 2d 1194, 1196 (D. Alaska 2005). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. *See, e.g.*, Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). Evidence must be concrete, and cannot be based on "mere speculation, conjecture, or fantasy." O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986).

**B.     EXECUTIVE RISK AND COLONY OWED AND BREACHED A DUTY TO DEFEND, MAKING THEM LIABLE FOR DOKOOZIAN'S DEFENSE COSTS**

Under Alaska law, the duty to defend arises whenever a claim includes factual allegations that are potentially covered. *See* Afcan v. Mut. Fire, Marine & Inland Ins. Co., 595 P.2d 638, 645 (Alaska 1979) ("[I]f the complaint [o]n its face alleges facts which, standing alone, give rise to a possible finding of liability covered by the policy, the insured has the contractual right to a proper defense at the expense of the insurer."). The insurer must defend unless there is "no possible basis on which the insurer would be required to

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 12

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

indemnify." Ivey v. Am. Home Assur. Co., 3:03-CV-0202-TMB, 2006 WL 1452686, at *3 (D. Alaska May 19, 2006). Once the duty is triggered, the insurer's refusal to defend or failure to pay defense costs is a breach of its duty. *See* Brannon v. Cont'l Cas. Co., 137 P.3d 280, 285 (Alaska 2006) ("An insurance company therefore breaches the duty to defend when it refuses to defend the insured."); Attorneys Liab. Prot. Soc'y, Inc. v. Ingaldson & Fitzgerald, P.C., 3:11-CV-00187-SLG, 2012 WL 6675167, at *3 (D. Alaska Dec. 21, 2012) ("[A]n insurer's obligation to provide independent counsel necessarily includes an obligation to pay for that counsel, without a right to reimbursement from the insured.").

In this case, the City's claims against Dokoozian were potentially covered under the Executive Risk and Colony policies because the City was suing Dokoozian for "wrongful acts," which, although defined differently, are covered under both the Executive Risk and Colony policies. The City alleged in its Superior Court lawsuit that Dokoozian violated the UTPCPA by filing a claim with the City that exceeded what Dokoozian ultimately sought in its arbitration demand. That constitutes a "wrongful act" under the Executive Risk policy, which is broadly defined as any "alleged . . . misleading statement . . . allegedly committed or attempted by . . . any Organization." Thus, the claims in the City's lawsuit (and therefore its arbitration counterclaims also[2]) were potentially covered under the Executive Risk policy, and Executive Risk owed a duty to defend.

Executive Risk admitted as much in its December 12, 2014 letter:

---

[2]    The claims in the City's lawsuit ultimately became counterclaims against Dokoozian in the arbitration between Dokoozian and the City.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 13

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

> In light of the foregoing, this will confirm that, Executive Risk, following our review of the information contained in the copies of the written materials provided to us, will agree to amend its coverage position to accept coverage for this matter as to Dokoozian Construction, LLC under Entity Liability Coverage Insuring Clause I.(C) of the D&O and Entity Liability Coverage Part of the Policy, subject to the following reservation of rights and satisfaction of the applicable $15,000 Retention.

Consistent with that admission, Executive Risk paid some of Dokoozian's defense costs.

*See Imig Decl., Ex. J; see also ¶ 22.*

The City's claims were likewise potentially covered under the Colony policy. It applies to "'claims' for damages arising out of [an act, error or omission in the rendering or failure to render ['professional services']." *Imig Decl., Ex. F* at 27. "Professional services" include "functions performed for others . . . related to your practice as a . . . construction manager." *Id.* at 20. The City's claims were potentially covered because the City alleged that Dokoozian's construction was faulty, and thus that Dokoozian failed to properly carry out its role as a construction manager. *See, e.g.*, *Imig Decl., Ex. C.*

Bayley Constr. v. Great American, 980 F. Supp. 2d 1281, 1286 (W.D. Wash. 2013), is instructive. In that case, the insured general contractor was allegedly responsible for its subcontractor's failure to pay prevailing wages to the subcontractor's employees. Bayley, 980 F. Supp. 2d at 1287. The issue in the case was whether the claim against the general contractor fell within the "professional services" coverage of its E&O policy. The court held it did, reasoning that an allegation the contractor failed to properly manage the construction site was enough to trigger the insurer's duty to defend. *See id.* at 1289 (holding insurer had duty to defend because "managing the responsibilities assigned under the Contract . . . was a task requiring professional skill and judgment"). Consistent with

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 14

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

these arguments (which Dokoozian's counsel shared with Colony in his November 24, 2014 letter), Colony agreed during the December 4, 2014 telephone conference (and in the follow-up email) that Colony owed a duty to defend Dokoozian.

Thus, the Court should rule that Executive Risk and Colony both owed and breached a duty to defend Dokoozian from the City's underlying claims, and that Executive Risk and Colony are therefore jointly and severally liable for at least[3] the attorney's fees, expert expenses, and other defense costs that Dokoozian reasonably incurred in defending against the City's claims.

## C.     EXECUTIVE RISK AND COLONY ARE ESTOPPED FROM DENYING COVERAGE FOR DOKOOZIAN'S LIABILITY TO THE CITY

It is well settled under Alaska law that when an insurer wrongfully refuses to defend its policyholder, the insurer is liable for the claim regardless of whether the insurer would have owed a duty to indemnify under the terms of its policy—*i.e.*, that the insurer is estopped from denying coverage.  *See e.g.*, Sauer, 841 P.2d at 184; Makarka ex rel. Makarka v. Great American Ins. Co., 14 P.3d 964, 969 (Alaska 2000) ("Our duty-to-defend cases have established . . . failure to defend gives rise to an indemnity remedy, even if it could later be proved that no coverage was due."); Theodore v. Zurich General Acc. & Liability Ins. Co., 364 P.2d 51, 56 (Alaska 1961) ("Zurich became liable for the amount of the judgment because this was the natural consequence of its breach of the insurance contract."); Flannery v. Allstate Ins. Co., 49 F. Supp. 2d 1223, 1227 (D. Colo. 1999) (citing

---

[3]     Dokoozian reserves the right to seek whatever additional damages flow from Executive Risk and Colony's breach of their duty to defend.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 15

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

<u>Sauer</u> in support of assertion that Alaska is among jurisdictions holding "an insurer who breaches its duty to defend is precluded from raising coverage defenses").

<u>Sauer</u> arose out of a liability insurer's failure to defend an underlying property damage dispute. The case ultimately went to trial, resulting in a verdict against the policyholder, who later declared bankruptcy. The estate's bankruptcy trustee sued the liability insurer, arguing it was "estopped from denying coverage because it failed to defend." <u>Sauer</u>, 841 P.2d at 180. The trial court denied the motion, held the underlying claim was not covered, and dismissed the trustee's suit.

The Alaska Supreme Court reversed. After explaining that the underlying claim was potentially covered, and therefore triggered the insurer's duty to defend, the court turned to the estoppel issue. The court held the insurer "[could] not contest coverage," and that it was therefore liable for the entire judgment against the policyholder:

> We hold, as a matter of law, that Home Indemnity may not contest coverage in Gross' action on the policy, and that it is liable for the entire amount of the judgment entered against Gross, as well as costs and attorney's fees incurred in the defense of the residents' action.
>
> This holding is mandated on the authority of <u>Theodore v. Zurich Gen. Accident & Liab. Ins. Co.</u>, 364 P.2d 51 (Alaska 1961). In <u>Theodore</u> we stated in part:
>
>> Since Zurich had the obligation to defend and refused to do so, the judgment became binding against it both as to the extent and existence of liability. Therefore, it did not have the right, when appellants brought this suit on the judgment, to show that the death of Arthur Theodore was not caused by the employee's liability section of the policy.
>
> *Id* at 56. ***Thus, an insurance company which wrongfully refuses to defend is liable for the judgment which ensues even though the facts may ultimately demonstrate that no indemnity is due***. The trial court erred in

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 16

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

Case 3:15-cv-00137-TMB   Document 73   Filed 01/25/16   Page 16 of 25

denying Gross' motion for summary judgment against Home Indemnity and in granting summary judgment for Home Indemnity.

Sauer, 841 P.2d at 183-84 (citations omitted, emphasis added).

Here, Executive Risk and Colony both agreed they had a duty to defend, but then wrongfully breached that duty by failing to fully pay Dokoozian's defense costs. According to Sauer, that breach estops Executive Risk and Colony from contesting coverage for the liability that Dokoozian incurred in the underlying dispute with the City.

**D.  EXECUTIVE RISK'S "OTHER INSURANCE" CLAUSE DOES NOT EXCUSE ITS BREACH OF ITS DUTY TO DEFEND**

The Court should also rule that the Executive Risk policy's "other insurance" clause does not excuse Executive Risk's breach of its duty to defend.  That clause was apparently why Executive Risk agreed it owed a duty to defend and paid some of Dokoozian's defense costs, but then stopped paying once Colony agreed to defend.  *See Imig Decl., Ex. K.*

Executive Risk's "other insurance" clause does not excuse its duty to defend because such clauses bear only on an insurer's rights with respect to other insurance companies, not on the insurer's duties to its policyholder:

> [A]pportionment among multiple insurers must be distinguished from apportionment between an insurer and its insured.  When multiple policies are triggered on a single claim, the insurers' liability is apportioned pursuant to the "other insurance" clauses of the policies or under the equitable doctrine of contribution.  ***That apportionment, however, has no bearing upon the insurers' obligations to the policyholder.***

Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co., 45 Cal. App. 4th 1, 105-06, 52 Cal. Rptr. 2d 690 (1996) (emphasis added).  Thus, an "other insurance" clause is relevant

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 17

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

only "to [the insurer's] obligation to contribute to a settlement or judgment, not to its duty

to defend":

> Vermont takes the position that . . . the operation of the "other insurance" clauses transforms the Vermont policy into an "excess policy" and relieves it of its contractual duty to defend.
>
> This argument reflects a fundamental misunderstanding of the nature and purpose of "other insurance" clauses that, like the ones involved here, make no reference to the insurers' defense obligations.[4] . . .
>
> [R]egardless of how the "other insurance" clauses may have operated in the event that both Vermont and Preferred were required to indemnify Joseph, they have no bearing on Vermont's concurrent duty to defend him. When a primary policy is not a true excess policy, but merely "is deemed 'excess' by virtue of other collectible insurance, *the limiting language is directed to its obligation to contribute to a settlement or judgment, not to its duty to defend*."

Preferred Mut. Ins. Co. v. Vermont Mut. Ins. Co., 32 N.E.3d 336, 343 (Mass. Ct. App.

2015) (emphasis added, citations omitted).[5]

---

[4] Executive Risk's "other insurance" clause similarly says nothing about not owing a duty to defend in certain situations; the clause simply says that Executive Risk's coverage "shall be excess of and shall not contribute with such other insurance" in certain situations. *See Imig Decl., Ex. E* at 25. Even if Executive Risk's "other insurance" clause did address its duty to defend, the clause would still not affect Executive Risk's duties to Dokoozian, as opposed to allowing it contribution rights. *See* Nautilus Ins. Co. v. Lexington Ins. Co., 321 P.3d 634, 648 (Hawai'i 2014) ("'Other insurance' clauses purporting to relieve the insurer of the duty to defend if the insurer becomes excess as to liability are enforceable, but only in an action between two or more insurers for recovery of defense costs.").

[5] *See also* Nautilus, 321 P.3d at 646 ("If a primary insurer is tendered a defense, and believes that it is actually an excess insurer or otherwise has no duty to defend by operation of its "other insurance" clause, then that primary insurer must still defend in the action."); Pac. Indem. Co. v. Linn, 590 F. Supp. 643, 652 n.10 (E.D. Pa. 1984) *aff'd*, 766 F.2d 754 (3rd Cir. 1985) ("The duty to defend is unaffected by an 'other insurance' clause because, unless stated otherwise, that obligation is independent of liability and any limitations thereon."); Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc., 513 F. Supp. 2d 157, 169 (M.D. Pa. 2007) ("An insurer's duty to defend is 'independent of liability and any limitations thereon.' Accordingly, other insurance provisions cannot remove an insurer's duty to defend, and the provision has no effect upon Westport's duty in the instant case.") (citations omitted); Platinum tech., inc. v. Fed. Ins. Co., No. 99 C 7378, 2000 WL 875881, at *6 (N.D. Ill. June 28, 2000) ("other insurance" clause not applicable to duty to defend "[b]ecause it is rather unlikely that an insurance company would be listed in the underlying complaint," yet court must determine existence of duty to defend from allegations in underlying complaint).

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 18

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

Although Alaska's courts appear not to have addressed this exact issue, the above principles are consistent with Providence Washington Ins. Co. of Alaska v. Alaska Pacific Assur. Co., 603 P.2d 899 (Alaska, 1979). In that case, the insurer of the lessor of a dump truck sued the insurer of the truck's lessee. The parties disputed their obligations arising out of an accident involving the truck. The trial court ruled that although the policies' other insurance clauses rendered the lessor's insurer primary as to damages, "***each party had a duty to defend***." Providence, 603 P.2d at 901 (emphasis added). The underlying case later settled within the lessor insurer's limits. Although the Alaska Supreme Court did not expressly address the defense cost issue in its decision, it did affirm on all grounds. Thus, Providence is consistent with the rule that an "other insurance" clause at most allows an insurer to seek contribution from another carrier; it does not affect either carrier's duty to defend the policyholder.

Executive Risk's "other insurance" clause is also irrelevant because such clauses apply only when two or more policies cover the same risk. In Federal Ins. Co. v. Firemen's Ins. Co. of Washington, D.C., 769 F. Supp. 2d 865, 876 (D. Md. 2011), for example, the court refused to give effect to an "other insurance" clause in a D&O policy because the policy covered different risks than the CGL policy to which the D&O coverage was allegedly excess:

> [T]he Court finds that the Netherlands [CGL] and the Federal [D&O] policies insure different risks. Therefore, the "other insurance" clause is inapplicable in this case, and Federal's insurance is not "excess" to the Netherlands' insurance coverage for [the insured].

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 19

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

<u>Federal</u>, 769 F. Supp. 2d at 876.[6]

Here, Executive Risk's D&O policy necessarily covers different risks than Colony's E&O insurance. In fact, the D&O policy purports to exclude the precise risk that the Colony policy covers—"professional liability." *See Imig Decl., Ex. E* at 23 (excluding claims "based upon . . . the rendering of, or failure to render, any **Professional Services**"). Thus, the "other insurance" clause is also inapplicable because Executive Risk's and Colony's policies insure "different risks."

**E.      DEFENDANTS ARE LIABLE FOR THE PORTION OF DOKOOZIAN'S CLAIMS THAT IT RELEASED AS PART OF ITS SETTLEMENT WITH THE CITY**

Dokoozian settled the City's claims against it by reducing the value of Dokoozian's affirmative claim against the City. Dokoozian originally sought over $17 million in damages, but settled for $3.25 million . By "paying" with that reduction of its own claim, Dokoozian secured a release of the City's counterclaims against Dokoozian— counterclaims that Dokoozian alleges Defendants had a duty to indemnify Dokoozian from. This Court should rule that to the extent the fact-finder agrees with these assertions,[7]

---

[6]    *See also* <u>Pac. Indem. Co. v. Linn</u>, 590 F. Supp. 643, 652 (E.D. Pa. 1984) <u>aff'd,</u> 766 F.2d 754 (3rd Cir. 1985) ("Aetna and Nationwide cannot be 'other insurance' as to each other because they did not insure against the same risk of liability."); <u>St. Louis Fire & Marine Insurance Co. v. Aetna Insurance Co.</u>, 283 F. Supp. 40, 46 (S.D. W. Va. 1968) ("[O]ther insurance clauses are applicable only where there is overlapping or double insurance and this occurs only where two or more policies insure the same party upon the same subject matter and assume the same risks.").

[7]    Dokoozian is not asking the Court to rule that Dokoozian did in fact reduce its claim to "pay" the City, which presents an issue of fact. Dokoozian is merely asking the Court to rule on the purely legal issue: whether an insurer must reimburse its policyholder when a "chose in action"—or a portion thereof—is given up to secure the release of a claim against the policyholder.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 20

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

Defendants are liable for the amount by which Dokoozian had to reduce its claim to secure the release of the City's claims against.

Because this is not an issue the Alaska Supreme Court has yet addressed, this Court should "endeavor to predict how the Alaska Supreme Court would decide the issue were it presented to that court." U.S. v. CNA Financial Corp., 381 F. Supp. 2d 1088, 1097 (D. Alaska 2005). The Court should "start[] with the basic proposition that the Alaska Supreme Court would 'adopt the rule of law that is most persuasive in light of precedent, reason, and policy.'" Id. (quoting Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

That "most persuasive" rule of law is set forth in Earth Elements, Inc. v. National American Ins. Co. of California, 48 Cal. Rptr. 2d 399 (Cal. Ct. App. 1995), *review denied*, (1996). In that case, a policyholder had been sued in an underlying lawsuit in which it asserted a counterclaim. When the policyholder's liability insurer refused to defend, the policyholder settled the case by dismissing its counterclaim. The policyholder then sued its insurer for coverage, claiming the insurer was liable for the value of the counterclaim that the policyholder used to "pay" the settlement. The California Court of Appeals agreed:

> The issue here is whether [policyholder] is entitled to be compensated for the value of that which it gave up in return for the settlement. That answer is clearly yes.
> . . . .
> A chose in action was given as consideration for a settlement. There is no analytical distinction between surrendering money in exchange for a settlement and exchanging any other item of value. While the value of money is apparent on its face, an intangible item is equally capable of being evaluated. Whether the insured gave up money or a chose in action, the consideration for the settlement had a value which is compensable because of the breach of the contractual duty to indemnify. [Policyholder] is entitled

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 21

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

to be compensated for the value of the consideration paid in settlement of the third party claim.

Earth Elements, 48 Cal. Rptr. at 401-02.

Applying this same reasoning, the Ninth Circuit recently held that the value of a judgment the policyholders had surrendered in an underlying case was the presumptive measure of damages in the policyholders' coverage dispute with their insurer:

> The surrender of a judgment may constitute consideration recoverable as compensatory damages. Therefore, the district court erred in dismissing the Morgans' claim that they are entitled to reimbursement for the $30,096.64 judgment they surrendered to Dimiceli as part of their settlement of Dimiceli's claims.

Morgan v. Chicago Title Ins. Co., 230 Fed. Appx. 656, 658 (9th Cir. 2007); *see also* Stargatt v. Fidelity & Cas. Co. of New York, 67 F.R.D. 689, 690 (D. Del. 1975) (holding primary insurer's payment of $135,000, when added to the release of a $650,000 counterclaim, constituted exhaustion of primary insurer's $300,000 policy limits, so as to trigger excess policy); Thane Int'l, Inc. v. Hartford Fire Ins. Co., 2009 WL 453106, at *6 (C.D. Cal. Feb. 19, 2009) (fair market value of goods relinquished in consideration for settlement of claims against policyholder recoverable as damages arising from insurer's breach).

As one insurance commentator put it, the insured's loss "may be more than he or she is out of pocket":

> Frequently, in settling a lawsuit, an insured not only will make a cash payment, but will agree to forgo a claim that the insured was asserting or could have asserted against the other party. The amount of the insured's loss, under those circumstances, may be more than the amount he or she is out of pocket. It is that amount increased by the value, if any, of the claim that was given up.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 22

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

For example, if the settlement figure was $100,000, but would have been $200,000 if the insured had not waived an affirmative claim, the insurer should, assuming a $200,000 settlement figure would not have been unreasonable, be liable for $200,000.

Allan D. Windt, *Insurance Claims and Disputes* § 6:30, at 6-302 to 6-303 (6th Ed. 2013).

In this case, Dokoozian was asserting a $17.4 million claim against the City at the same time the City was suing Dokoozian for potentially covered claims. Dokoozian reduced its claim against the City to get those claims against Dokoozian released. As in Earth Elements, Dokoozian surrendered (a portion of) its own "chose in action" to "pay" the City. Put another way, had Dokoozian *not* given up a portion of its claim against the City, the City would have required Dokoozian to pay the City cash—cash that Defendants may[8] have had to pay on Dokoozian's behalf. The Court should follow the reasoning of Earth Elements and hold that to the extent the fact-finder determines Dokoozian reduced its claim against the City to pay a covered liability, the amount of that reduction is covered.

## VI.   CONCLUSION

The Court should issue an order that (1) Executive Risk and Colony owed and breached a duty to defend Dokoozian; (2) Executive Risk and Colony are estopped from denying coverage; (3) Executive Risk's "other insurance" clause did not excuse its duty to defend; and (4) Defendants may be held liable for the portion of Dokoozian's claim that Dokoozian's released to settle covered claims.

---

[8]    Aside from the estoppel issue in Section C, Dokoozian's is not at this point asking the Court to address whether Defendants had a duty to indemnify Dokoozian from the City's claims.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 23

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

DATED this 25th day of January 2016.

HARPER | HAYES PLLC


By: s/*Todd C. Hayes*
    Todd C. Hayes, *Pro Hac Vice*

AHLERS & CRESSMAN PLLC


By: s/*Paul R. Cressman*
    Paul R. Cressman, AK Bar No. 0607046
    Attorneys for Plaintiffs

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 24

**Case No. 3:15-cv-00137-TMB**
Dokoozian v. Executive Risk, et al.

Case 3:15-cv-00137-TMB   Document 73   Filed 01/25/16   Page 24 of 25

# CERTIFICATE OF SERVICE

I hereby certify that on *Monday, January 25, 2016*, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following parties and counsel of record:

**Counsel for Executive Risk Specialty Insurance Company**

Timothy M. Lynch
Hozubin, Moberly, Lynch & Associates
711 M Street, Suite 2
Anchorage, Alaska 99501
Tel:         907.276.3222
Fax:        907.278.9498
Email:     tlynch@northlaw.com

Janet R. Davis
Gary L. Gassman
Cozen O'Connor
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Tel:         312.474.7900
Fax:        312.474.7898
Email:     jrdavis@cozen.com
             ggassman@cozen.com

**Counsel for Defendant National Union Fire Insurance Company of Pittsburgh, Pa**

Jason Kettrick
Jeffrey D. Laveson
Linda B. Clapham
Carney Badley Spellman
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-5017
Tel:   206.622-8020
Fax:   206.467-8215
Email: kettrick@carneylaw.com
       laveson@carneylaw.com
       clapham@carneylaw.com

**Counsel for Defendant Colony Insurance Company**

Jim M. Boardman
Ingaldson Fitzgerald P.C.
813 W. 3rd Avenue
Anchorage, AK 99501
Tel:         907.258.8750
Fax:        907.258.8751
Email:     jim@impc-law.com

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED *January 25, 2016* in Seattle, Washington.

*Nicole Plouf*
_____
Nicole Plouf

CERTIFICATE OF SERVICE
**Case No. 3:15-cv-00137-TMB**