William H. Ingaldson
Jim M. Boardman
Ingaldson Fitzgerald, P.C.
813 W. 3rd Ave.
Anchorage, Alaska 99501
Phone: (907) 258-8750
Fax: (907) 258-8751
bill@impc-law.com
jim@impc-law.com
Attorneys for Defendant
Colony Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DOKOOZIAN CONSTRUCTION, LLC, An Alaska Corporation, | ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| EXECUTIVE RISK SPECIALTY COMPANY, a foreign insurance Company, COLONY INSURANCE COMPANY, a foreign insurance Company, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a foreign insurance Company, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) Case No. 3:15-cv-00137-TMB ) |
| _____ | ) |

## COLONY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

Defendant Colony Insurance Company moves for summary judgment because the claim alleged in the underlying City of Cordova lawsuit is not covered under the

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

applicable Colony Insurance policy. The City of Cordova's lawsuit alleged a violation of Alaska's Unfair Trade Practices Act based on alleged fraudulent billing by Dokoozian which is not a professional service provided to others which would be covered by the Colony policy and fraudulent activity is specifically excluded on the policy.

## I. <u>STATEMENT OF FACTS</u>

### a. Phase I Construction of the Cordova Community Center.

In August 2010, the City of Cordova and Dokoozian entered into a contract in which Dokoozian served as the general contractor for the first phase of construction for the Cordova Community Center Project.[1]

During construction of the project, Dokoozian encountered several problems that it attributed to the project plans and specifications, site conditions and other issues.[2] In response, Dokoozian submitted "case proposals" to request additional funds.[3] In all, Dokoozian submitted some 133 separate case proposals to the City.[4] If the City approved a case proposal it was identified as a Change Order, entitling Dokoozian to additional compensation.[5] Ultimately, the approved Change Orders caused the contract price to increase from Dokoozian's bid amount of $8,305,060 to $10,455.1137.[6]

---

[1] Docket 75, Declaration of Kurt Imig, ¶ 4.
[2] Docket 104, Exhibit A, City of Cordova Complaint.
[3] Docket 104, Exhibit A, ¶ 10.
[4] *Id*.
[5] **Exhibit A**, Depo. of Kurt Imig, p. 75.
[6] Docket 104, Exhibit A, ¶ 11.

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

### b. Dokoozian's Request for Equitable Adjustment of its Construction Bill Led to the Underlying Lawsuit.

In January, 2013, Dokoozian submitted a Request for Equitable Adjustment ("REA") to the City which sought payment for the unapproved case proposals for an additional amount of $9,985,435.[7]  Dokoozian's Rule 30(b)(6) representative, Kurt Imig, described how this figure was created:

> We just went through each of the case proposals that we had outstanding there that we had made notice on, reserved rights for and we went back and accumulated the historical costs for those elements and then looked at the other contractual items that would arise from that, delineated those and then included the source documentation and the job reports to roll that up into the claim amount.[8]

The REA was prepared by Kurt Imig, with assistance from Dokoozian's accounting department.[9]

After the REA was submitted to the City, the City requested back-up documentation and financial records to document the amount of money Dokoozian actually spent on the project.[10]  Dokoozian did not fully comply with the request until almost one year later.[11]  Two months after that, on March 17, 2014, Dokoozian and the City unsuccessfully engaged in mediation.  Where "the City made presentations detailing the fraudulent nature of Dokoozian's claims."[12]

---

[7] *Id*. at ¶ 13.
[8] **Exhibit A**, Imig Depo., pp. 54-55.
[9] *Id*. at 41; **Exhibit B**, Haley Depo., pp. 38-39 (Mr. Haley testified he was not involved with the initial REA submittal to the City, rather Mr. Imig prepared the packet).
[10] Docket 104, Exhibit A, ¶ 16.
[11] *Id*.
[12] *Id*. at ¶ 28.

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Five days after the unsuccessful mediation, on March 22, 2014, Dokoozian filed a AAA demand for arbitration in which it cut its demand almost in half, now seeking additional compensation of $5,800,000.[13] This figure was obtained by using a modified total cost method to calculate what sums were allegedly due to Dokoozian.[14] After subsequent settlement efforts failed, the City of Cordova filed a lawsuit against Dokoozian for violation of Alaska's Unfair Trade Practices Act (A.S. 40.50.471 et. seq.).[15] The City's one count claim which was filed on July 21, 2014, pleaded:

> 33. The REA that Dokoozian presented to the City on January 8, 2013 was prepared and presented with fraudulent intent, and was deliberately crafted with the goal of obtaining an unjustified windfall in excess of $3 million at the expense of the City, its taxpayers and its citizens.

> 34. In its REA, Dokoozian concealed material facts, asserted false claims, misrepresented the true cost of the work it performed, and grossly overstated the compensation to which it was legally entitled for the work it performed. By engaging in this conduct with the intent of inducing reliance by the City regarding the amount, veracity and legitimacy of its Project-related claims, Dokoozian has violated the Alaska Unfair Trade Practices and Consumer Protection Act under AS 45.50.471(b)(12).[16]

At his deposition, Mr. Imig recognized that the City's claim was essentially a "false claims act" because of issues the City had with the REA he prepared and submitted for payment.[17]

### c. Defense and Handling of the City's Lawsuit.

In response to the City's lawsuit, Dokoozian's counsel, involved in the ongoing arbitration initiated by Dokoozian, entered an appearance and promptly filed a motion

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

---

[13] *Id*. at ¶ 29.
[14] **Exhibit D**, Cressman Depo., pp. 11-12.
[15] Docket 104, Exhibit A, ¶ 29.
[16] *Id*. at ¶¶ 33-34.

to stay the Cordova lawsuit.[18]  In the meantime, Dokoozian's insurance broker tendered the City's lawsuit to Colony.  Significantly, the counterclaims raised in the arbitration were never tendered to Colony.[19]

On July 29, 2014, Colony acknowledged receipt of the UTPA lawsuit.[20]  In addition, Colony's adjuster spoke with Kurt Imig and advised him that there may be no coverage available due to the fraud allegations and other issues.[21]  At his deposition, Mr. Imig acknowledged that if the REA involved fraud, then no insurance company would have indemnity or defense obligations.[22]  Five weeks after filing the City's UTPA lawsuit, the Cordova Superior Court entered an order granting Dokoozian's motion to stay that litigation.[23]  On December 1, 2014, Dokoozian made an offer of judgment in the arbitration matter for $3,250,000.  The City of Cordova accepted that offer of judgment on December 10, 2014, which ended all claims between Dokoozian and the City of Cordova.[24]

## II. DISCUSSION

There is no coverage for the City's UTPA claim.  Even if there was coverage, Dokoozian's damage claims are not legally or factual supported.

---

[17] **Exhibit A**, Imig Depo., pp. 108-110.
[18] Docket 73, p.5.
[19] **Exhibit E**, Depo. of Garrett Kern, p. 37.
[20] Docket 104, Exhibit B.
[21] *Id*. at Exhibit C, p. 2.
[22] **Exhibit A**, Imig Depo., p. 235.
[23] Docket 73, p. 5.
[24] Docket 73, p. 10.

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

## A. The Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment avoids unnecessary trials when there is no dispute as to the facts in the matter before the court.[25] The burden of showing the absence of a genuine dispute of material fact lies with the moving party.[26] If the moving party meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[27]

The non-moving party may not rely on mere allegations or denials.[28] Rather, the non-moving party must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties differing versions of the truth.[29] To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party."[30]

If the evidence provided by the nonmoving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[31] "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is

---

[25] *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).
[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).
[28] *Id.*
[29] *Id.* at 255.
[30] *Anderson*, 477 U.S. at 248.
[31] *Id.* at 249.

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

no genuine issue for trial," so summary judgment is appropriate.[32]   A district court must not only consider the record on summary judgment, but must also consider that record in light of the governing law.[33]

### B. The City of Cordova's Lawsuit Does Not Trigger Coverage under Colony's Errors and Omissions Policy.

The interpretation of an insurance policy is a question of law.[34]   Insurance contracts are construed using the reasonable expectations doctrine, under which the objectively reasonable expectations of an insurance applicant about the terms of the contract will be honored even though painstaking study of the policy would negate the expectations.[35]   Grants of coverage are construed broadly, while exclusions are narrowly interpreted.[36]   When interpreting insurance policies, courts look to the language of the disputed provisions, other provisions of the policy, extrinsic evidence and case law interpreting similar provisions.[37]   However, where a reasonable lay interpretation of the policy would not encompass coverage under the circumstances, there is no ambiguity and therefore no coverage.[38]

---

[32] *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

[33] *Anderson*, 477 U.S. at 248.

[34] *State Farm Mut. Auto. Ins. Co. v. Houle*, 269 P.3d 654, 657 (Alaska 2011).

[35] *Devine v. Great Divide Ins. Co.*, 350 P.3d 782, 786 (Alaska 2015).

[36] *Houle*, 269 P.3d at 658.

[37] *United States Auto Ass'n v. Neary*, 307 P.3d 907, 910 (Alaska 2013).

[38] *Makarka ex. rel. Makarka v. Great Am. Ins. Co.*, 14 P.3d 964, 969 (Alaska 2000).

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

1.  <u>The Colony Insurance Policy</u>.

Colony issued an Errors and Omissions Liability Policy to Dokoozian.[39] Essentially, this is professional malpractice insurance.[40]  The insuring agreement of the Colony Policy provides, in pertinent part, as follows:

> We will pay, . . . those sums the insured becomes legally obligated to pay as "damages" because of a "wrongful act" to which this insurance applies.[41]

The Colony Policy defines "wrongful act" to mean "an act, error or omission in the rendering or failure to render "professional services" by any insured covered under Insuring Agreement E."[42]

The Colony Policy defines "professional services" to mean "those functions performed for others by you or on your behalf that are related to your practice as a consultant, engineer, architect, surveyor, laboratory or construction manager."[43]  Thus, the Colony Policy only provides coverage for professional construction manager services performed for others by or on behalf of Dokoozian.

---

[39] Docket 75, *Imig Decl., Exh. F*, pp.1-2.
[40] *Conestoga Services Corp. v. Executive Risk Indemnity, Inc.*, 312 F.3d 976, 981 (9th Cir. 2002).
[41] Docket 75, *Imig Decl., Exh. F*, p.27.
[42] *Id* at 22.
[43] *Id*. at 21.

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

2. <u>Colony's Errors and Omissions Policy Does Not Provide Coverage for Billing Claims Because such Activities Do Not Constitute Professional Construction Management Services Performed for Others.</u>

Professional liability policies do not insure against all liability incurred by the insured.[44]  Instead, such policies use the term "professional services" or equivalent language to describe the scope of coverage.[45]  Colony's Policy is similar to other policies in that it provides coverage for an act, error or omission in the rendering of "professional services" to others.[46]  The term "professional service" is defined by the policy to mean "those functions performed for others by you or on your behalf that are related to your practice as a … construction manager."[47]  Thus, the issue before the court is simply whether the City of Cordova's UTPA lawsuit involves a service performed for others that relates to Dokoozian's practice as a construction manager.

The City's lawsuit alleged Dokoozian's REA was prepared with fraudulent intent, concealed material facts, and asserted false claims  with the intent to grossly overstate the compensation to which Dokoozian was legally entitled.[48]  A review of the REA demonstrates that the REA was designed to obtain payment from the City for costs Dokoozian allegedly incurred on the project.  The REA Dokoozian submitted to the City "to obtain compensation for the substantial increase in their cost and time of

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

---

[44] *Zurich American Ins. Co. v. O'Hara Regional Center*, 529 F.3d 916, 924 (10th Cir. 2008); 23 Appleman on Insurance § 146.3[A] (2d ed. 2003).
[45] 23 Appleman on Insurance § 146.3[A].
[46] Docket 75, *Imig Decl., Exh. F*, p. 27.
[47] Docket 75, *Imig Declaration*, *Exh. F*, p. 21.
[48] Docket 104, Exhibit A, ¶¶ 33-34.

performance and the Cordova Center Phase 1 Project,"[49] it explicitly states **"[t]he project is finished and the bills are past due …."[50]** The last part of the REA contains a one-page summary of the REA sums sought by Dokoozian, called a "lead sheet," and requests payment of $9,985,437.00 for the "Total outstanding impacts and costs."[51] Thus, the City's single-count lawsuit is a claim that Dokoozian submitted a false and/or fraudulent bill.

A similar matter was recently handled in this District, involving a construction company's improper billing for its services. In *Alaska Interstate Construction, LLC v. Crum & Foster Specialty Ins. Co.*,[52] Alaska Interstate (AIC) provided soil remediation services to Restoration Science and Engineering (RSE) for a North Slope project.[53] The soil being remediated contained excessive levels of ground water so AIC addressed the problem by mixing in recently remediated soil.[54] When this was later disclosed, it was alleged the process led to inflated charges for the remediation and ultimately led to a lawsuit with claims of excess charges and use of an uncertified and uncalibrated scale.[55]

AIC tendered the lawsuit to Crum & Foster under an errors and omissions policy. The tender was denied on the basis that the allegations of the lawsuit were not

---

[49] **Exhibit C**, Dokoozian's REA, p. 3.
[50] *Id.* at 16 (emphasis added).
[51] *Id.* at 17.
[52] 2014 WL 7359074 (D. Alaska Dec. 23, 2014).
[53] 2014 WL 7359074 at *1.
[54] *Id*.
[55] *Id*.

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

"wrongful acts" committed in the course of "professional services."[56] AIC then filed suit against Crum & Foster claiming for breach of contract and bad faith.[57]

The errors and omissions policy provided coverage for claims seeking damages caused by "wrongful acts," which the policy defined as "an act, error or omission in the rendering or failure to render professional services."[58] The court recognized that under Alaska law, the term "professional services" included acts:

> arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill … and in determining whether a particular act is a 'professional service' the court must look not to the title or character of the party performing the act, but to the act itself.[59]

The court recognized that professionals are required to perform many tasks that do not constitute professional services, such as making payments, obtaining office equipment or administrative tasks.[60] The court agreed that "billing practices and accurate invoicing to clients are administrative tasks common to many businesses and are therefore not professional services."[61] The court found that "AIC's billing for the inclusion of

---

[56] *Id*. at *2.

[57] *Id*.

[58] *Id*. at *3.

[59] *Id* (citing *Am.Motorists Ins. Co. v. Republic Ins. Co.*, 830 P.2d 785, 787 (Alaska 1992) (quoting 7A J. Appleman, Insurance Law and Practices § 4504.01 at 309-10) and *Bank of California v. Opie*, 663 F.2d 977, 981 (9th Cir. 1981)).

[60] *Id*.

[61] *Id*. (citing *Reliance Nat. Ins. Co. v. Sears, Roebuck & Co., Inc.*, 58 Mass.App.Ct. 645, 648 (2003) ("As billing is not a professional service, it does not come within the coverage of a professional liability insurance policy[.]"); *Horizon W., Inc. v. St. Paul Fire & Marine Ins. Co.*, 45 Fed.App. 752, 754 (9th Cir. 2002) (" 'Professional Services' under the plain meaning of the policy do not extend to Horizon West's … billing activities[.]"); *Med. Records Assocs., Inc. v. A. Empire Surplus Lines Ins. Co.*, 142 F.3d 512, 514-16 (1st Cir. 1998) ("The bill is an effect of the service provided not part of the service itself." Setting prices and producing accurate invoices are generic business practices, not professional services.); *Zurich Am. Ins. Co. v. O'Hara Reg'l Ctr. for Rehab.*, 529 F.3d 916, 925 (10th Cir. 2008) (failure to file accurate

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

already remediated soil was not a 'professional service,' but was an administrative function of AIC's business, independent of the professional decision to blend the clean and contaminated soil."[62]

Cases from other courts have similarly held errors and omissions policies do not cover billing procedures and/or services because they are not professional services. See *PMI Mortgage Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 394 F.3d 761, 766 (9th Cir. 2005) opinion amended on denial of reh'g, No. 03-15728, 2005 WL 553004 (9th Cir. Mar. 10, 2005) (valuation and pricing of services do not typically involve professional services); *Horizon Wests, Inc. v. St. Paul Fire & Marine Ins. Co.*, 45 Fed. Appx 752, 753-54 (9th Cir. 2002) (submission of false Medicare and Medicaid claims do not result from nursing homes failure to provide a professional service); *Gandor v. Torus National Ins. Co.*, 140 F.Supp.3d 141, 148 (D. Mass. 2015) (tasks such as paying bills, hiring staff and collecting on accounts receivable are not within the professional aspect of practicing law); *John M. O'Quinn P.C. v. National Union Fire Ins. Co.*, 33 F.Supp.3d 756, 772-73 (S.D.Tex. 2014) (billing and/or fee-splitting practices do not constitute "professional services."); *Bennett v. U.S. Liability Ins. Group*, 2014 WL 1660654, *5 (D.Oregon April 25, 2014) (insurer had no duty to defend or indemnify insured as using improper entity to collect bills did not involve professional services); *Chicago Ins. Co. v. Center for Counseling and Health Resources*, 2011 WL 1222792, *2-3 (W.D.Wash.

---

reimbursement claims with government is not a failure to provide professional services); *Gregg & Valby, L.L.P. v. Great American Ins. Co.*, 316 F.Supp.2d 505, 513-14 (S.D.Tex. 2004) (the court found setting a price and billing the client were "merely administrative tasks inherent in all businesses," so there was no coverage)).

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Mar. 3, 2011) (insurer's duty to defend or indemnify not triggered as billing is not part of a professional service); *Hampton Medical Group, P.A. v. Princeton Ins. Co.*, 366 N.J.Super. 165, 180 (N.J.App. 2004) ("We have concluded billing practices of plaintiffs, which are at the heart of the Blue Cross/Blue Shield litigation, do not constitute professional services and any liability which may be imposed upon plaintiffs in that litigation cannot be considered the result of a medical incident arising out of supplying or failing to supply professional services."); and *supra Alaska Interstate Const.*, 2014 WL 7359074, *3 n.36. Thus, improper and/or fraudulent billing services are not related to the provision of a professional service.

### 3. The City of Cordova Lawsuit Alleges One Count Pertaining to Improper Billing Which is Not Covered by the Colony Policy.

The Cordova lawsuit contains a single count for unfair trade practices.[63] The nine-page Complaint alleges Dokoozian submitted 133 "case proposals" when "Dokoozian believed it was entitled to additional time or compensation...."[64] When the City believed the case proposals meet contract requirements that justified relief the case proposals were approved via Change Orders which ultimately increased the total contract price to $10,455.137.[65] After Dokoozian was removed from the project, it submitted an REA in which "Dokoozian represented it was legally entitled to additional compensation of $9,985,437 for work Dokoozian and its subcontractors performed on

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

---

[62] *Id*. at *4.
[63] Docket 104, Exhibit A, ¶ 10.
[64] *Id*. at ¶ 11 (emphasis added).
[65] *Id*. at ¶ 11.

the Project."[66] This sum was for money Dokoozian represented it was "owed" for work on the project.[67] Thus, the REA sought total payment of $20,440,574, an amount well above the original $8,305,060 bid.

The City reviewed the REA and determined that the case proposals "were fraudulent" and that Dokoozian was "attempting to recover for alleged Project-related expenses that were either grossly inflated or entirely fictitious."[68] The complaint alleged that Dokoozian sought additional "labor costs" of $3,722,575,[69] "additional overhead" of $2,994,945[70] and extended warranty "expenses" of $203,000 for which Dokoozian never incurred any costs.[71]

The Cordova lawsuit alleged that Dokoozian made a request for additional payments on the services it provided to the City, but that Dokoozian was not legally entitled to the compensation it sought because it was fraudulent. Dokoozian's Rule 30(b)(6) corporate representative, Mr. Kurt Imig, testified that he viewed the City's lawsuit as essentially a "false claims act" that was brought because the City thought Dokoozian "overinflated costs for the REA."[72] Dokoozian's own attorney who reviewed the City's UTPA lawsuit was concerned that the over-inflated REA was, in fact, possible fraudulent.[73]

---

[66] *Id.* at ¶ 13 (emphasis added).
[67] *Id.* at ¶ 13.
[68] *Id.* at ¶ 17.
[69] *Id.* at ¶ 18.
[70] *Id.* at ¶ 20.
[71] *Id.* at ¶¶ 24-25.
[72] *Id.* at 108-109.
[73] **Exhibit D**, Cressman Depo., p. 27.

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Case 3:15-cv-00137-TMB   Document 219   Filed 06/30/17   Page 14 of 38

As discussed above, Colony's Errors and Omissions Policy only provides coverage for "wrongful acts" to which the Colony Policy applies.[74] The Colony Policy defines a "wrongful act" as "an act, error or omission in the rendering of professional services by any insured."[75] In turn, the Colony Policy defines "professional services" as "functions **performed for others** by you … related to your **practice as a … construction manager**."[76]

Coverage of the City's lawsuit is precluded under Colony's Policy because Dokoozian prepared the REA for its own behalf. The bill was not a service "performed for others." It was Dokoozian's bill.

Moreover, such billing services are not "professional work." As courts from this district, the Ninth Circuit and numerous other jurisdictions have recognized, sending out a bill to get paid does not constitute professional work. It is an activity every company engages in.[77] Thus, the Colony policy does not cover the City of Cordova's UTPCA lawsuit.

---

[74] Docket 75, *Imig Decl., Exh. F*, p. 27

[75] *Id*. at 22.

[76] *Id* at 27 (emphasis added).

[77] See *PMI Mortgage Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 394 F.3d 761, 766 (9th Cir. 2005) opinion amended on denial of reh'g, No. 03-15728, 2005 WL 553004 (9th Cir. Mar. 10, 2005)(valuation and pricing of services do not typically involve professional services); *Horizon W., Inc. v. St. Paul Fire & Marine Ins. Co.*, 45 Fed.App. 752, 754 (9th Cir. 2002) ("'Professional Services' under the plain meaning of the policy do not extend to Horizon West's … billing activities[.]"); *Alaska Interstate Construction, LLC v. Crum & Foster Specialty Ins. Co.*, 2014 WL 7359074, *3-4 (D. Alaska Dec. 23, 2014) (billing for remediated mixed soils was not a professional service).

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

4. <u>The Colony Policy Excludes Coverage for Claims of Fraud and Conduct Undertaken to Gain an Illegal Advantage or Profit</u>.

Separately, exclusion 3 under the Common Policy Provisions of the Colony Policy broadly excludes coverage as to all claims arising out of an insured's fraudulent, dishonest, intentional, or knowing misconduct, as well as all claims arising out of an insured's attempt to gain a profit or an advantage to which it is not legally entitled. In relevant part, that exclusion excludes coverage as to all claims:

Based upon or arising out of:

a.   Any criminal, fraudulent, or dishonest act, omission or offense; however, we shall defend against any insured if such allegations involve a "claim" to which this insurance otherwise applies until judgment or other final adjudication establishes, or if such insured admits, that such act, omission or offense was committed, or personally acquiesced in, by such insured;

b.  Any act, omission or offense committed with knowledge of its wrongful nature or with the intent to cause damage;

c.  The gaining by any insured of any personal profit, gain or advantage to which the insured is not legally entitled; . . ..[78]

Because the only claim that Dokoozian tendered to Colony explicitly alleged fraud on the part of Dokoozian, there is no coverage for the claim under the Colony Policy.

Even construed broadly, a simple reading of the City's Complaint reveals that it seeks recovery against Dokoozian only on a theory of fraud. As discussed above, the City's only claim in the Cordova lawsuit alleged that Dokoozian committed fraud by "attempting to recover for alleged Project-related expenses that were either grossly

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

inflated or entirely fictitious."[79] According to the Complaint, the REA that Dokoozian submitted "was prepared and presented with fraudulent intent, and was deliberately crafted with the goal of obtaining an unjustified windfall in excess of $3 million at the expense of the City, its taxpayers and its citizens."[80] The Complaint alleged Dokoozian "concealed material facts, asserted false claims, misrepresented the true cost of the work it performed, and grossly overstated the compensation to which it was legally entitled for the work it performed."[81] The City claimed that Dokoozian "engag[ed] in this conduct with the intent of inducing reliance by the City regarding the amount, veracity and legitimacy of its Project-related claims."[82] The Complaint contains no allegation of any negligent, innocent, or non-fraudulent conduct on the part of Dokoozian.

While the Alaska court has not addressed an exclusion similar to that at issue here, courts in other jurisdictions hold that coverage is excluded where a complaint alleges only fraudulent or intentional misconduct on the part of an insured. In *Connecticut Indem. Co. v. DER Travel Service, Inc.*,[83] DER, a rental car company, was sued under Illinois's Consumer Fraud Act on allegations that it engaged in fraudulent billing practices against consumers. The complaint against DER alleged that DER "violated the Consumer Fraud Act through 'deceptive pricing and other deceptive acts'

---

[78] Docket 75, *Imig Declaration*, *Exh. F*, p. 14.
[79] Docket 104, Exhibit A, ¶ 17.
[80] *Id.*, ¶ 33.
[81] *Id.*, ¶ 34.
[82] *Id.*
[83] 328 F.3d 347 (7th Cir. 2003).

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

which were 'intentionally and willfully effected in disregard of law.'"[84] DER tendered defense of the lawsuit to its insurer.

The insurer denied coverage under a policy exclusion that excluded coverage "liability arising out of any act, error, or omission which is willfully dishonest, fraudulent, or malicious, or in willful violation of any penal or criminal statute or ordinance, and is committed (or omitted) by or with the knowledge or consent of the 'insured.'"[85] The insurer brought a declaratory judgment action in the Federal court, seeking a determination that it had no duty to defend the suit against DER. The parties filed cross-motions for summary judgment. The District Court ruled in favor of DER, holding that the complaint against it did not "clearly preclude the plaintiffs from establishing liability under a negligence standard," and "did not clearly exclude a non-intentional claim under the Consumer Fraud Act."[86]

On appeal by the insurer, the Seventh Circuit reversed. The Court analyzed the allegations in the complaint against DER in detail, and observed that "[t]he facts, as presented in the complaint, are consistently couched in terms of intentional deception and fraud."[87] While acknowledging that the Consumer Fraud Act permitted claims based on negligence, the court emphasized that the complaint against DER "is barren of any mention of negligence, inadvertence, error, or mistake, or anything even implying such conduct. Instead, the complaint spoke only that DER deceived, schemed, and

---

[84] *Id*. at 348.
[85] *Id*.
[86] *Id*. at 349.
[87] *Id*. at 350.

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

defrauded consumers."[88] Because the complaint alleged only fraudulent or intentional misconduct by DER and omitted any suggestion of negligent or innocent misconduct, the hypothetical possibility that the plaintiffs *could have* elected to proceed under a negligence theory was irrelevant to the coverage issue presented.[89] The court thus held that the claims against DER were excluded under the policy's fraud exclusion.[90]

As in *Connecticut Indem.*, the City's Complaint against Dokoozian was based entirely on the theory that Dokoozian presented a fraudulent claim in its REA with the specific intent to cause the City to pay it sums to which Dokoozian was not legally entitled. The Colony Policy expressly excludes coverage for any claim arising out of: (a) any fraudulent or dishonest act; (b) any act committed with knowledge that it is wrongful or with the intent to cause damage; or (c) an attempt by an insured to gain a profit or gain to which it is not legally entitled.[91] The City's claims against Dokoozian fall within each of these prongs of the fraud exclusion.

This exclusion is also consistent with Alaska's "general public policy against insuring a person against liability for his or her intentional acts."[92] Under Alaska law, an explicit policy exclusion precludes coverage as to claims asserted against an insured.[93]

---

[88] *Id.*
[89] *Id.* at 350-51.
[90] *Id.* at 351.
[91] Docket 75, *Imig Declaration*, *Exh. F*, p. 14.
[92] *Kim v. National Indem. Co.*, 6 P.3d 264, 267 (Alaska 2000) (quoting *St. Paul Fire & Marine Ins. Co. v. F.H.*, 55 F.3d 1420, 1423 (9ᵗʰ Cir. 1995), citing *Dairy Queen v. Travelers Indem. Co.*, 748 P.2d 1169, 1172 (Alaska 1988)).
[93] *Bellefonte Ins. Co. v. Wayson*, 489 F.Supp. 58, 60 (D.Alaska 1980).

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3ʳᵈ Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

Because all of the City's claims are excluded under the fraud exclusion of the Colony policy, there is no coverage available to Dokoozian.[94]

### C.    Dokoosian is not Entitled to Recover Additional Attorney's Fees and Costs.

Dokoozian claims that it is entitled to recover attorney's fees incurred prior to its tender to Colony, including fees to put together its REA and participate in the earlier arbitration and mediation, as well as attorney's fees and costs it has incurred post-mediation to pursue its affirmative claims.  However, even if Colony had a defense obligation, that obligation would not extend to pre-tender fees and costs incurred by Dokoozian.  In addition, Dokoozian would not be entitled to recover post-tender fees and costs incurred to pursue its affirmative claims and Dokoozian's recovery would be limited to reasonable fees at the rates Colony pays retained defense counsel in Alaska. In fact, Dokoosian has been paid post tender fees and costs in excess of the amount it was entitled to receive.

---

[94] Subparagraph (a) of the fraud exclusion excludes coverage for fraudulent or dishonest acts, but contains an exception to that exclusion in cases involving allegations of a claim "to which this insurance otherwise applies." That exception is not applicable in this case because, as shown above, none of the City's claims were covered under the policy and so the insurance available under the policy did not "otherwise apply."   And even if that exception were applicable in this case, it applies only to subparagraph (a), not to subparagraphs (b) and (c), and so coverage still would be excluded under the latter two subparagraphs.

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3ʳᵈ Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX:  (907) 258-8751

1. <u>Dokoozian is not Entitled to Recover Pre-Tender Attorney's Fees and Costs</u>**.**

   a. <u>The Contract's Notice Provisions Prohibit Pre-Tender Fees.</u>

The insurance contract between Colony and Dokoozian has a provision which dictates the insured's duties in the event of a claim or lawsuit. Specifically, this provision provides as follows:

**5. Duties In The Event Of A Claim Or Suit**

The duties outlined in this Condition apply to Insuring Agreements **A, B, D, E,** and **F**, only:

**a.** If a "claim" is received by any insured, you must:

   **(1)** Immediately record the specifics of the "claim" and the date received; and

   **(2)** Notify us as soon as practicable.

**b.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the "claim"or defense against the "suit", if applicable;[95]

While the Alaska Supreme Court has not had the opportunity to examine this language, numerous courts have recognized the same or similar language prohibits pre-tender defense fees and costs.

INGALDSON FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

In *Research Corp. v. Westport Ins. Corp.*, 289 Fed.Appx. 989 (9th Cir. 2008), the Ninth Circuit dealt with a claim for defense fees that were incurred 6 months before the insured tendered a lawsuit to the carrier. The Court ruled such fees were not recoverable because under the express terms of the contract, the insured failed to fulfill its duties precedent to coverage by failing to give immediate notice of the claim and not obtaining consent before incurring defense costs.[96] Similarly, in *Elan Pharm. Research Corp. v. Employers Ins. of Wausau*, an insured incurred defense fees of $500,000 prior to tendering the claim to its carrier.[97] The trial court granted summary judgment in favor of the insurer on whether the insured could recoup these fees.[98] The Court of Appeals upheld the lower court's decision, and relied on language in the conditions provisions of the insurance policy that required notice "as soon as practicable" and that the suit paperwork be forwarded "immediately" to conclude the insurer was not obligated to pay the pre-tender defense costs.[99] The Court further explained that the insurer's duty to defend was not triggered until the insured notified the insurer and "as a result, [the insurer] is not liable for the litigation expenses … incurred before that date."[100]

---

[95] Docket 75, Imig Decl, Exh. F, Colony Policy, Common Policy Provisions, p. 8 or 14.
[96] *Research Corp.*, 289 Fed.Appx. at 994.
[97] *Elan*, 144 F.3d 1372, 1381 (11th Cir. 1998).
[98] *Id*. at 1381.
[99] *Id.*
[100] *Id*; *see also* Allan D. Windt, <u>Insurance Claims and Disputes</u>, § 4.44 (4th Ed. 2001) ("[M]ost of the courts that have addressed the issue [of pre-tender defense costs] have held that an insurer is not liable for pre-tender defense costs because: (1) the policy coverage is not triggered until such notice is given, and (2) until the policy coverage is triggered, defense costs are not covered."); *Corky McMillan Const. Services Inc. v. U.S. Specialty Ins. Co.*, 597 Fed.

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

The backbone of these decisions is that until the insurer has actual notice of a claim, it is not in a position to defend because the carrier is unaware of the lawsuit/claim, so it cannot assess whether or not it has defense obligations.[101]  While Alaska courts have not dealt with the issue of pre-tender defense costs, they have recognized that receipt of a complaint is the vehicle that generally triggers defense obligations.  *See e.g. ALPS, Inc. v. Ingaldson Fitzgerald, P.C.,* 370 P.3d 1101, 1111 (Alaska 2016) (duty to defend arises based on allegation in the complaint); *Devine v. Great Divide Ins. Co.*, 350 P.3d 782, 788 (Alaska 2015) ("The duty to defend is triggered if there is at least one cause of action alleged in the complaint for which there is a possibility of coverage under the policy."); *Great Divide Ins. Co. v. Carpenter*, 79 P.3d 599, 607-08 (Alaska 2003) (Duty to defend arises when complaint alleges facts giving rise to a possibility of coverage).  Once a carrier receives a complaint, it can assess its defense obligations, but before this time it does not have the ability to determine whether or not a defense is owed.  Under the policy language, and implicit in Alaska case law, notice of a complaint is the action that trigger the assessment of whether a duty to defend is owed.  In this case, Dokoozian did not comply with the notice provisions of the insurance contract until July 25, 2014.  Thus, noncompliance with these explicit terms voids any obligation of Colony to cover pre-tender defense costs.

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

---

Appx. 925, 927 (9th Cir. 2015) ("Absent written tender of defense, the policy requires the Insureds to defend themselves, no matter that Defendant had notice of the claim.").
[101] *Supra* at pp. 8-9 & n. 40.

b. <u>Pre-Tender Defense Costs are Not Recoverable Pursuant to the Contracts Voluntary Pay Provision</u>.

The Colony insurance policy also contains a provision which states:

c. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other then for first aid, without our consent.[102]

This provision is commonly known as the Voluntary Payment clause.

Numerous courts have interpreted the Voluntary Payment provision as a bar to coverage for any costs incurred prior to tender of notice.[103]  The vast majority of courts have held that even in the absence of a voluntary payments provision, coverage is unavailable, under liability policies, for pre-tender costs.  See e.g. *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 273-74 (6th Cir. 2010) ("the majority of other jurisdictions do not allow recovery for pre-tender costs because those are deemed waived by the insured, especially when an insurance contract prohibits voluntary payments without the consent of the insurer, and so no showing of prejudice is required on the part of the insurer.").  Consistent with this approach, in *Northern Insurance Company of New York v. Allied Mutual Ins. Co.*, the Ninth Circuit held that a voluntary payments provision precluded coverage for defense costs incurred prior to tender of notice to the insurer.  *Northern Insurance*, 955 F.2d 1353, 1360 (9th Cir.

---

[102] Docket 75, Imig Decl., Exh. F, Common Policy Provisions, p. 8 of 14.

[103] *See e.g. Embroidme.com, Inc. v. Travelers Property Cas. Co.*, 845 F.3d 1099, 1106-07 (11th Cir. 2017) (voluntary payment provision barred insured's recover of pre-tender defense fees and costs); *Siltronic Corp. v. Employers Ins. Co. of Wausau*, 2015 WL 181785, *10 (D.Or. 2015) (insurer is not obligated to pay pre-tender costs); *Legacy Partners, Inc. v. Travelers*, 83 Fed Appx. 183, 189 (9th Cir. 2003) (same applying Texas law); *Faust v. Travelers*, 55 F.3d 471,

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

1992) ("[T]he policy has a provision precluding reimbursement for defense costs voluntarily incurred before tender. California courts have consistently honored these provisions, and will not require insurers to pay for voluntarily incurred pre-tender costs."). And the Ninth Circuit has recognized that the prejudice requirement is inapplicable to pre-tender costs.[104]

Dokoozian incurred costs and fees for 15 months before the *City of Cordova* lawsuit was filed with the court.[105] It argues these were "necessary" to defend the future lawsuit, but regardless of the merits of this visionary argument, these fees and costs were incurred before the July 25, 2014 tender so they constitute voluntary payments.[106] The contract precludes reimbursement for such costs because Dokoozian made no effort to obtain Colony's consent for these costs and fees. Thus, as a matter of law, Colony is not required to reimburse any of Dokoozian's defense fees and costs incurred prior to the July 25, 2014 tender of defense.

### 2. Dokoozian is Not Entitled to Recover Attorney's Fees and Costs Incurred to Pursue its Affirmative Claims.

It is well established in Alaska that an insurer's duty to defend does not extend to costs and fees not within the scope of the insurer's reasonable defense. Dokoozian has refused to segregate the costs it claims it incurred to defend the City's UTPA lawsuit from Dokoozian's attorney's fees incurred to pursue its affirmative claims and defend

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

---

472-73 (9th Cir. 2003) (same applying California law); *LaFarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 399 n.19 (5th Cir. 1995) (insurer not responsible for pre-tender costs).
[104] *Faust v. The Travelers*, 55 F.3d 471, 473 (9th Cir. 1995).
[105] Docket 104, Exh. E, p. 88-147.
[106] *Id.* at 11-12; 87-147.

non-tendered claims, claiming that "everything we did - - all that was up for offense, it was also for defense - - to beat the City's claims - - the City's window claims, the City's claims for damages, for delay - - and we had the counterpart to that."[107]

First, if that is true, then Dokoozian did not incur any additional attorney's fees or costs because of the City's UTPA lawsuit. Indeed, Dokoozian's attorney, Paul Cressman, admitted as much:

> Q. So if the City had - - let me ask it a different way. If the City had not asserted any claims at all, would you have incurred the same amount of costs?
>
> A. Yes.
>
> Q. Okay. And if Dokoozian had not asserted any claims at all, would Dokoozian have incurred the same amount of costs?
>
> A. Yes.
>
> Q. Okay. So do I understand what you're saying is that you had to do that work, either to pursue Dokoozian's claims or - -
>
> A. - - defend the Citys - -
>
> Q. - - defend the City's claims or both?
>
> A. Correct.
>
> Q. The same work would have been involved?
>
> A. Yes.[108]

Of course, Dokoozian intended to pursue its affirmative claims irrespective of claims asserted by the City. It filed its claims first. It demanded arbitration. And,

---

[107] See **Exhibit D,** Cressman deposition at p. 82.
[108] Id. at p. 83.

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

ultimately, it settled its claims for an affirmative recovery. Consequently, with the exception of fees incurred to read the complaint, tender it and obtain a stay of the City's lawsuit, which has not yet been segregated, Dokoozian, by its own admission, has not incurred any additional attorney's fees or costs as a result of the City's lawsuit.

Second, by not segregating its attorney's fees and costs, the trier of fact will be forced to speculate as to the amount of attorney's fees and costs that are attributable to the defense of the City's UTPA claim. Again, such speculative damages are not permissible.

3. <u>Insurers Are Only Obligated to Pay Reasonable Attorney's Fees at Rates the Insurer Normally Pays Retained Counsel</u>.

The law in Alaska regulating independent counsel fees has been formed by the Alaska Supreme Court and Alaska legislature and limits such fees. In *CHI*, the Alaska Supreme Court limited the fees of independent counsel to "reasonable" fees.[109] After *CHI*, the Alaska legislature weighed in on the subject and further restricted the fees of independent defense counsel.

The legislature passed Alaska Statute 21.89.100 which provides guidance to the billings of independent counsel. It mandates that the rates of independent counsel are limited to the rates that are actually paid by the insurer to an attorney in the ordinary course of business in defense of a similar civil action in the community in which the

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3<sup>d</sup> Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

---

[109] *CHI*, 844 P.2d at 1121

claim arose or is being defended.[110] Thus, as to any recoverable attorney's fees, the rate should be limited to the rates that Colony normally pays to retain counsel in Alaska.

    4.    <u>Dokoozian has not presented any evidence that it is entitled to additional attorney's fees</u>.

Dokoozian has been paid post-tender attorney's fees by one of its insurers. In an amount in excess of $130,000. Given that the only activities relating to the defense of the City's UTPA lawsuit would have been reviewing the City's complaint, and drafting a motion to stay that lawsuit, it is inconceivable that the amount Dokoozian has already been paid was deficient.

**D. Dokoozian is not entitled "indemnity" damages relating to its settlement with the City.**

In addition to seeking recovery of its attorney's fees, Dokoozian claims that it is entitled to indemnity damages of $3,084,000, which it asserts is the combined damages the City of Cordova was claiming in its UTPA lawsuit and its arbitration counterclaims (which were never tendered to Dokoozian's insurers). Dokoozian claims that when it settled with the City of Cordova, it compromised its affirmative claims because Colony had not yet affirmed or denied that the claim in the City's UTPA lawsuit was covered.[111]

First, Dokoozian's theory of recovery has never been adopted in Alaska. Second, Dokoozian's theory of recovery is not factually supported. Third, even if

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

---

[110] A.S. 21.89.100(d).

[111] As argued in a separate motion, in fact, the City's UTPA claims are not covered under the Colony policy. If that motion is granted in Colony's favor, the present motion will be moot.

Dokoozian's theory was factually and legally viable, the maximum amount Dokoozian could recover under that theory would be the lesser of the amount of the reasonable settlement value of the City's claim in its UTPA lawsuit and the amount by which Dokoozian reduced its affirmative claims. The amount Dokoozian is claiming exceeds such amounts.

1. <u>Dokoozian's "Indemnity Damage" Recovery Theory Has Not Been Recognized in Alaska</u>.

Alaska law does not recognize Dokoozian's "indemnity" damage theory In fact, Colony's counsel has located only one case from any other jurisdiction in which a court has adopted a similar theory, *Earth Elements, Inc. v. National American Ins. Co. of California*,[112] and that case involved substantially dissimilar facts.

In *Earth Elements*, an insured was sued for damages, and subsequently filed a counterclaim against the plaintiff. After the insured's insurer denied defense of the suit, the parties agreed to a settlement under which the plaintiff dismissed its claims against the insured and the insured dismissed its counterclaim. The insured then sued its insurer for breach of the duty to defend, alleging as damages the value of the counterclaim that it had agreed to dismiss. The case was presented to the trial court on stipulated facts to resolve a single question: whether the compromise of the counterclaim constituted damages available against the insurer for breach of contract. Under the facts as

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

---

[112] 41 Cal.App.4th 110, 48 Cal. Rptr.2d 399 (4th Dist. 1995).

stipulated in that case, the court held that the insured was liable for the value of the counterclaim.[113]

The holding in *Earth Elements* is limited to the narrow facts of that case and is not relevant under the facts of this case. In that case, the insurer and the insured stipulated that the counterclaim was dismissed as consideration for the settlement of the claims against the insured, and that the counterclaim had a value of $1 million.[114] The court emphasized that the counterclaim "was given as consideration for a settlement," and that because the insurer and the insured agreed that the counterclaim had a value of $1 million, the insured's giving of that counterclaim in exchange for a settlement was no different than payment by the insured of a sum of money.[115]

In this case, however, there is no evidence that there was such an agreement between Dokoosian and Colony. In fact, Dokoosian did not even make Colony aware that it was making an offer of judgment to the City, let alone reach an agreement that its offer of judgment reflected a compromise of Dokoosian's affirmative claims in consideration of an agreed settlement value of the City's UTPA lawsuit.

        2. <u>Dokoozian's Offer of Judgment Was Not Influenced by Colony's Acts or Omissions.</u>

In Alaska, there is "overall uncertainty associated with settlement values."[116] This is because they are "complicated and opaque considerations" so are often only a

---

[113] *Id*. at 402.

[114] *Id*. at 401.

[115] *Id*. at 402.

[116] *Petrolane, Inc. v. Robles*, 154 P.3d 1014, 1021 (Alaska 2007).

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

"rough approximation" of value.[117]   Simply put, "[s]ettlement dollars are not the same

as damages."[118]   The party seeking damages bears the burden of proof of such

damages[119] by "competent evidence"[120]   In order to qualify as admissible evidence of

damages: (1) the evidence must prove that the loss was caused by the tort and (2) the

amount must be supported by sufficient evidence to provide the jury with a reasonable

basis for computing the award.[121]   Dokoozian fails to satisfy both requirements.

As to the first prong, Paul Cressman, Jr., the attorney representing Dokoozian at

the time its Offer of Judgment was made to the City, testified that the amount

Dokoozian offered in its offer of judgment to the City was not influenced by whether or

not there was insurance coverage for the claims asserted by the City of Cordova.

> Q.     When Dokoozian made its offer of judgment, was there any - - did
> the issue ever come up at all whether or not there was - - as part of the
> decision of how much money to offer - - - as to whether or not there was
> insurance coverage for the claims asserted by the City of Cordova?
>
> A.     No.
>
> Q.     Did that issue come up?
>
> A.     I don't recall that.
>
> Q.     Was there any decision made at all to make a lower offer of
> judgment because of the position the insurance companies were taking?
>
> A.     Don't recall.  Don't believe that's the case.[122]

---

[117] *Robles*, 154 P.3d at 1021-22.
[118] *Id*. at 1022 n.28.
[119] *Conam Alaska*, 842 P.2d 148, 154 (Alaska 1992).
[120] *Dowling Supply & Equip. Inc. v. City of Anchorage*, 490 P.2d 907, 909 (Alaska 1971).
[121] *Conam Alaska v. Bell Lavalin, Inc.*, 842 P.2d 148, 154 (Alaska 1992); *City of Whittier v. Whittier Fuel and Marine Corp.*, 577 P.2d 212, 222-24 (Alaska 1978).
[122] Exh. D, Depo of Paul Cressman, Jr., p. 76.

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Since Dokoozian's settlement offer to the City of Cordova was not, in fact, influenced by anything Colony did or did not do, Dokoozian's "indemnity" damages must fail.

### 3. Even if Dokoozian's Indemnity Claim Was Legally and Factually Viable, the Amount Claimed Is Not Supported by Competent Evidence.

Even if Dokoozian's indemnity claim is allowed under Alaska law and Dokoozian, in fact, reduced the amount of its offer of judgment because of uncertainty as to whether the City's claims were covered by insurance, the *most* Dokoozian could recover would be the lesser of the amount it reduced the settlement demand it made before it tendered any claims to its insurers and its maximum exposure to the City's tendered claims.

### a.  Dokoozian's Settlement Evaluation Before the City's UTPA Lawsuit.

In June, 2014, Dokoozian offered to settle its claims against the City for $4,600,000.   This offer was made before the City filed its UTPA lawsuit.[123] Consequently, Dokoozian cannot reasonably claim that it reduced its offer of judgment due to its concerns over exposure to the City's UTPA lawsuit by more than the difference between $4,600,000 and its offer of judgment of $3,200,000.

However, even that amount is not supported by credible evidence.  First, it is not reasonable to attribute all of that reduction to concern caused by uncertainty as to whether the City's UTPA claim was covered and attribute none of it to the City's other

---

[123] See **Exhibit F**, Dokoozian's response to Request for Admission No. 28.

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

claims or weaknesses in Dokoosian's affirmative claims, there is no basis, other than speculation, for the trier of fact to assess the reasonableness of the City's claim.

        b.     <u>The City's UTPA Claims.</u>

As noted above, Dokoosian's claimed "indemnity damages" of $3,084,000 includes a $600,000 window claim and a $984,000 delay claim which were asserted in the arbitration proceedings but were *not* tendered to Dokoosian's insurers. The UTPA lawsuit is the only matter that was tendered to Dokoozian's insurers. Dokoozian certainly is not entitled to recover as damages the amount it allegedly reduced its affirmative claims to resolve claims asserted against it by the City that were not even tendered to Dokoosian's insurers.. To the extent Dokoosian is allowed to recover such indemnity claims, it should be limited to the reasonable value of the City's UTPA claim.

Dokoozian claims this amount is $1,500,000, which it calculates by trebling the amount it asserts the City claimed as actual damages. However, Dokoozian offers no factual support whatsoever for the $500,000 figure. The City's complaint does not even demand that amount. The City's complaint summarily states that "the City would have avoided over $300,000 in costs for the experts who analyzed and debunked Dokoozian's demands."[124]

But even the $300,000 mentioned in the City's complaint is devoid of any factual support. Certainly the City would have had its experts review and analyze

---

[124] **Docket 104, Exh. A., ¶16**.

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Dokoozian's revised claim asserted in its arbitration demand. While certainly the City would not have just accepted that demand without having its experts review it.

An allegation in a complaint is not evidence of damages. It is simply an unproven allegation until the plaintiffs have satisfied its burden of proof.[125] Significantly, Dokoozian did absolutely nothing to determine and evaluate the factual support for the City's damage allegations, and still has not done so. Dokoozian did not even request the City to produce billing records for the City's alleged costs for work done by its experts, let alone review any such records to determine what costs might have been related to investigation of allegedly fraudulent claims.

The likely reason for that is that, in fact, Dokoozian did not place any value on that claim. As one of its owners, Kurt Imig testified:

> Q.     And what was your understanding of what the City was asserting against you?
>
> A.     The asserted damages for windows, for legal defense costs and for delay.
>
> Q.     Well, they also had an unfair claims settlement practices act.
>
> A.     That's correct, yes. Yeah.
>
> Q.     And that was based on - - what's your understanding of what that was based on?
>
> A.     They levelled a fraudulent - - false claims act against - - false claims issue with the REA.
>
> Q.     So they claim that you basically fraudulently submitted an REA?
>
> A.     Yes. They said we over inflated costs for the REA.

---

[125] *Conam Alaska*, 842 P.2d at 154.

**INGALDSON FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

Q.      Did you?

A.      Not at all.

* * *

Q.      Well, did you think there was any weight to that claim at all?

A.      I prepared the REA and I felt that I did it in a fair and equitable fashion and I did it with  - - in the terms of the agreement and the industry standards customary.  I felt I did it right.  I did not feel that I had done anything incorrect in the counting and the filing of that request for equitable adjustment. [126]

Later at his deposition, when Mr. Imig was again directly asked about the weight he placed on the City's UTPA claim, he did not deny that the assertion that he placed zero value on that claim.

Q.      And in fact when you were evaluating the possible risk and possible exposure to Dokoozian for the false claims claim, you valued your exposure at zero, didn't you?

A.      I – I thought that we - - I thought that we had prepared a claim that was not false.  Our - - that - - that was my personal opinion on that issue.  Dokoozian as a company - - and interactions with Ahlers & Cressman - - took that claim serious, went and did research on the false claims, and we expended dollars and began a process to defend against that claim.

Q.      Okay.  But you valued the merit of that claim at zero?

A.      At - - being the author of the IRA - - the REA, when someone said that I did something fraudulent - - yes, I would say I disagree. [127]

Moreover, Mr. Imig conceded that, in his opinion, his insurers did not have an obligation to defend or indemnify Dokoozian for fraudulent conduct.

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX:  (907) 258-8751

---

[126] **Exhibit A**, Imig deposition at pp. 108-110.
[127] Id. at pp. 237-238.

Q.      Okay.  Well, let's ask you're opinion.  If your position that if Dokoozian had filed a false - - fraudulent request for equitable adjustment, that its insurers should have to defend and indemnify Dokoozian for that?

A.      Matter of policy.  But as I understand, if we are fraudulent in actions, the policy do not respond.[128]

In short, Dokoozian's offers no evidence that would provide a factual basis for the jury to determine the reasonableness of Dokoosian's claimed reduction in its affirmative claims based on its insurers actions or inactions related to the City's UTPA lawsuit.  To the contrary, the evidence establishes that what Dokoosian's insurers did or did not do with respect to The City's UTPA claim had no effect on Dokoosian's Offer of Judgment.  Any such damage award would not only be impermissibly speculative,[129] it would be contrary to the evidence.

## CONCLUSION

The City of Cordova's lawsuit alleges a claim that Dokoozian engaged in fraudulent billing practices.  That claim is not covered under the Colony Error's and Omissions professional service policy issued to Dokoozian because the claim conduct is not a professional service or an act or omission for others and because fraudulent acts are excluded under the policy as Dokoozian has admitted.

Alternatively, even if Colony's insurance policy did provide cover for the City's UTPA claims, Dokoozian's claimed damages are not recoverable both as a matter of law and fact.  As to attorney's fees and costs, any recover is limited post-tender attorney's fees and costs that did not duplicate the attorney's fees and costs Dokoozian

INGALDSON FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX:  (907) 258-8751

---

[128] **Exhibit A**, Imig deposition at pp. 235-236.

incurred to pursue its affirmative claims, at rates not to exceed the rates Colony's retained counsel in Alaska. In fact, Dokoozian has already been paid post-tender attorney's fees in excess to which it is entitled.

As to Dokoozian's claim for "indemnity damages," that claim is based on a legal theory not recognized in Alaska and, more importantly, that claim is not factually supported. There is simply no evidence that Dokoozian's offer of judgment to the City was influenced at all by concerns as to whether or not there was insurance coverage for the City's UTPA claims. To contrary, as Dokoozian's attorney admitted, that issue was not even discussed when Dokoozian decided to extend the offer of judgment. Moreover, Dokoozian admitted that it did not believe fraud claims would be covered. Consequently, any away of such damages would be based on pure speculation.

Therefore, Colony respectfully requests that the court enter summary judgment against Dokoozian and in favor of defendants.

Dated this 30th day of June, 2017.

INGALDSON FITZGERALD, P.C.
Attorneys for Defendant Colony
Insurance Company


By:s/Jim M. Boardman
Jim M. Boardman
ABA No. 9206022

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

---

[129] *Cameron*, 251 P.3d at 1021.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of June, 2017
a copy of the foregoing was served electronically on:

**For Plaintiff**

Todd Christopher Hayes – todd@harperhayes.com
Charles K. Davis – cdavis@harperhayes.com
Harper Hayes, PLLC
600 University Street, Suite 2420
Seattle, WA 98101-1129

Paul R. Cressman, Jr. – pcressman@ac-lawyers.com
Ahlers & Cressman, PLLC
999 Third Avenue, Suite 3800
Seattle, WA 98104

**For Defendant Executive Risk Specialty
Insurance Company**

Gary L. Gassman – ggassman@cozen.com
Janet R. Davis – jrdavis@cozen.com
Cozen O'Connor
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606

Rebecca J. Hozubin – rebecca@akdefenselaw.com
Hozubin, Moberly, Lynch & Associates
711 M. Street, Suite 2
Anchorage, Alaska 99501

s/ Jim M. Boardman

INGALDSON
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751